STEWART, J.
^ The plaintiff, Everlee Jackson, appeals a judgment dismissing her suit captioned as a “Petitory Action with Request for Declaratory Relief’ against the defendants, Billy and Edith Herring (“the Herrings”), concerning a small piece of property near Grand Cane in DeSoto Parish. For the reasons explained in this opinion, we reverse the trial court’s judgment and remand for the trial court to fix the boundary in accordance with La. C.C. art. 794.
FACTS
Ms. Jackson’s petition filed on April 22, 2009, asserted that she is the owner of Lot 14, described as follows:
Lot 14, known as the Hobgood residence site,- being the same property as is described in Conveyance Book 4, page 462, records of Desoto Parish, Louisiana and two lots in Grand Cane, Louisiana, being lots No. 1 and 12 of Block 35 of the Town of Grand Cane, LA, as per map of plat thereof and being the same property as is described in Book 6, Page 147, Conveyance Records of Desoto Parish, Louisiana, together with all buildings and improvements thereon. (Being the same property sold by Sheriffs Sale Deed executed under date of August 22, 1984, unto Jessie Lee Ford, bearing Registry # 469,318 and filed in Book 562 at Page 425, Conveyance Records of De-soto Parish, La.)
Ms. Jackson asserted that Jessie Lee Ford sold Lot 14 to her by cash sale deed on July 24, 2007. In November 2008, the Herrings erected a fence that barred Ms. Jackson’s access to part of the property on which a house is located. Ms. Jackson requested that the court order a survey to ascertain the limits of her property, and she prayed for a judgment ordering the Herrings to remove the fence and providing “all other general and equitable relief.”
In an amended and supplemental petition filed after the Herrings’ answer, Ms. Jackson asserted that she has had uninterrupted possession of the property in dispute “in excess of ten years.”
|2In their answer, the Herrings denied the allegations of Ms. Jackson’s petition. They asserted they erected the fence entirely on their own property on the north side of La. Highway 3015 (“the highway”) and that Ms. Jackson’s property, Lot 14, is located entirely on the south side of the highway. The Herrings claimed that the property at issue is part of a 28-acre tract which they purchased in 1994 from Harry L. Calhoun and Sheila L. Smith Calhoun and which is described as follows:
A tract containing 28 acres, more or less, located in and adjacent to the Town of Grand Cane, Louisiana, described as follows: Commencing 6 chains North and 71 degrees West from the Northwest Corner of Lot 13(said Lot 13 being described in the transfer of W.F. Hob-good as recorded in Conveyance Book 2, Page 408), running thence North 73 degrees West 19 chains 87 links; thence North to the line between Southeast Quarter and Northeast Quarter of Section 29, Township 13 North, Range 14 West; then run East with said line to Grand Cane city limits 21 chains 43 links, thence with said line South 22 degrees East 13 chains 85 links, thence South 68 degrees West 2 chains 68 links; *11 thence North 71 degrees West 4 chains 74 links; thence South 17 degrees West 3 chains 35 links to place of beginning, containing 28 acres, more or less; being a portion of the property acquired by Moss M. Bannerman from John M. Rogers by deed of March 31, 1911, recorded in Book 26, Page 333, and acquired by John N. Rogers from T.D. Jefferies on January 30, 1906, recorded in Book 19, Page 154, Conveyance Records of Deso-to Parish, Louisiana, together with all buildings and improvements located thereon.
SAID Lot 13 described in the transfer deed to W.F. Hobgood being described as follows, to-wit:
Commencing at the Southwest Corner of Grand Cane, Desoto Parish, Louisiana, thence run West 9 chains 73 links; North 07 degrees West 13 chains; South 83 degrees East 05 chains 98 links to Grand Cane city line; thence run South 22 degrees East to place of beginning, containing 10.32 acres, together with all buildings and improvements located thereon.
The Herrings also pled acquisitive prescription of 10 years.
^Photographs in evidence show the disputed property to be in a rural area. An old red house is set off the highway in a clearing, and a smaller structure is located behind the house. A barbed wire fence affixed with a sign marked “private property” and “no trespassing” runs along the front of the property just beyond the ditch and utility poles.
The matter proceeded to a trial on March 31, 2011.

Trial Testimony

Ms. Jackson, age 78, testified that she purchased Lot 14 from Jessie Lee Ford (“Aunt Jessie”), her 101-year old aunt who was in a nursing home at the time of trial. She related that Aunt Jessie obtained Lot 14 from her aunt, Ruby Lee Ford Johnson (“Aunt Ruby”), and she introduced a sheriff sale deed dated August 22, 1984, evidencing Aunt Jessie’s purchase of Lot 14 belonging to the Succession of Ruby Ford Johnson. Ms. Jackson also introduced the cash sale deed evidencing the purchase of Lot 14 by Aunt Ruby from Myrtis D. Porter, in 1959. Ms. Jackson explained that Aunt Ruby and Myrtis were the daughters of John Ford, her great-great grandfather who purchased Lot 14 of the Hobgood Estate, from S.D. Hobgood in 1890 as evidenced by the cash sale warranty deed which was also introduced into evidence. We note that the property descriptions in both the 1890 deed and the 1959 deed refer to Lot 14 as containing 2.32 acres.
Ms. Jackson stated her belief that the disputed property is part of Lot 14 and related her memories of visiting there from the time that she was a little girl. She dated her earliest memories to when she was seven years old. |4She recalled going there to visit Aunt Jessie and Aunt Ruby and playing under the plum trees on the property. She stated that Aunt Jessie had occupied the house for as long as she could remember. She related that another house, which no longer exists, had also been located “next to the little outer house” and occupied by a cousin named Tim Ford. She recalled going to her cousin’s house, which had been torn down and running “to the other house which was Aunt Ruby Lee Ford across the road.”
Ms. Jackson testified that she would check the house periodically because Aunt Jessie had furniture, clothing, and other items in the house. She stated that the bathroom had been “recently remodeled.” According to Ms. Jackson, Aunt Jessie had maintained utilities at the house and she continued to do so. She explained that she *12 was still “paying the light bill.” Ms. Jackson last visited the house two years ago around the time the fence was erected. She believed it was September. She stated that the young man who took care of the yard around the house every two weeks told her that a fence had been erected and a no trespassing sign put up.
When questioned by counsel for the Herrings, Ms. Jackson clarified that there had been two houses on the property north of the highway and one house on the property south of the highway. She also reiterated her belief that the red house is located on Lot 14 property north of the highway. When asked whether anyone had lived in the red house on a regular basis during the last ten years, she stated, “Not on a regular basis, but someone was living there.” She noted that she had been unable to get to the house within Ifithe last two years since the Herrings erected the fence and posted the “No Trespassing” sign.
George Jones testified that he has known Jessie Lee Ford since 1998 when he began doing yard work for her around the house north of the highway and on the property on the south side of the highway. He identified a photograph of the red house on the north side of the highway as the house where Ms. Ford was living in 1998. In addition to doing yard work, Mr. Jones stated that he redid a bathroom and closet in the house in 1998. He testified that he maintained the lots on both sides of the highway every two weeks initially for Ms. Ford and then for Ms. Jackson. He only stopped doing so when the fence was erected along the front of the north side of the highway barring access to that part of the property. On cross by the Herrings’ counsel, Mr. Jones testified that there had once been two houses north of the highway, one of which had been torn down. Another house had been located south of the highway, but it had burned down.
Ms. Jackson also presented the testimony of Kenneth Murphy, a land surveyor. Mr. Murphy performed a possession survey for Jessie Lee Ford in 2005 of the property around the red house north of the highway. The possession survey, which encompasses 1.18 acres and is dated February 23, 2005, was introduced into evidence. It is designated a Class D survey, but Murphy testified that he had probably done a Class C survey, which is somewhat more accurate though not as accurate as a Class A or Class B. As stated on the survey, Murphy did not conduct any title or public record search in compiling the data for the survey. Instead, he based the boundary |fiof the property “on an old fence that had been there for a long time.” For the survey he “simply shot the old fence and everything that the fence surrounded.” Photographs introduced into evidence show the old fence along the tree line around the clearing where the house is located. Murphy testified that Ms. Ford was present during some of his survey work, and he believed that she was living in the house. He testified that it looked like the yard was being maintained. When questioned by the Herrings’ counsel, Murphy stated that he did not obtain from any records the description on the survey and that he had not examined the Herrings’ 1994 deed to determine whether the old red house was on their property.
After the completion of Ms. Jackson’s case, Mr. Herring testified that he first purchased about 70 acres in 1972 on which he later built his house and two barns. He operated a dairy farm business. On July 1, 1994, the Herrings purchased the 28-acre tract from the Calhouns. They obtained a preliminary title opinion from an attorney verifying that the Calhouns had *13 good and valid title to the property, but no survey was done. Notably, the title opinion states in the absence of a survey no determination could be made as to whether there was any adverse possession, boundary disputes, or other defects of title affecting the property. Mr. Herring testified that he was engaged in raising cattle and selling timber around the time he purchased the 28-acre tract. When asked whether he had ever seen anyone living in the red house, he stated “Never have. Not since I bought it anyway.” He identified photographs of the red house, which he described |7as being in “bad shape.” Finally, he asserted that the red house is located on his property, not Lot 14 owned by Ms. Jackson.
When questioned by counsel for Ms. Jackson, Mr. Herring testified that he had never been in the red house. He admitted that there is a utility meter at the house but claimed it was not recording any usage. When shown photographs of the old fence upon which Mr. Murphy based the possession survey, Mr. Herring admitted that he had not put up that fence and did not know how long it had been there. He testified that around October 2008 he put up a fence along the north side of the highway on the advice of his attorney. He wanted to prevent anyone from coming onto his property unannounced. Mr. Herring testified that he regularly maintained the property after putting the fence up, but he indicated that he had not done so before then. He also testified that he had not had cattle on the land, presumably referring to the 28 acres, but that he had sold timber off it and leased it several times. He could not say when this would have occurred.
The Herrings also presented the testimony of Michael Perry Bowman, a land surveyor. Bowman surveyed the 28-acre tract acquired by the Herrings from the Calhouns and determined that the red house is located on the Herrings’ property and not on Lot 14. Bowman testified that he spent a significant amount of time on the project because “[tjhere are so many deeds that are bad.” He noted that the original Hobgood partition map was off an entire chain, meaning 66 feet. After identifying Lot 14, the highway, and the Herrings’ 28-acre tract on a map, Bowman testified that Lot 14 actually extends on both sides of the highway. He explained that a small part of Lot |s14 runs 25 feet north of the right of way and about 50 feet along the right of way. However, he testified that the old red house is not located on the part of Lot 14 that is north of the highway.
Counsel for Ms. Jackson questioned Bowman about the accuracy of his survey in light of the errors in some of the deeds. Bowman explained that he could not find a plat of the Hobgood subdivision but that he had written descriptions of all the lots from the Hobgood partition. Even though there were errors in some of the deeds, Bowman used the legal descriptions to draw the survey map. He explained the process by stating, “And a lot of the times they don’t close. So you’ve got to figure out, you know, where it went, where it closes.” He agreed with counsel that the errors in the deeds required him to make educated guesses when completing the survey map. He noted that even the deed for Lot 15 of the Hobgood partition had an error, and he identified Lot 15 as the Herrings’ 28-aere tract even though the Herrings’ property description does not mention Lot 15.

Ruling of the Trial Court

After taking the matter under advisement, the trial court rendered a written ruling in favor of the Herrings on May 18, 2011. Noting the Bowman survey to be “accurate and well founded,” the trial court *14 concluded that the old red house is located on Lot 15 of the Hobgood partition and is included in the Herrings’ title. The trial court then considered whether Ms. Jackson acquired ownership through acquisitive prescription. Due to lack of a just title, the trial court concluded that she could not have acquired the property in ten years. The court also concluded that she had not acquired |9the property by prescription of 30 years. The trial court found that Ms. Jackson and her ancestors in title had exercised possession over “Lot 15.” However, citing Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984), writ denied, 452 So.2d 1176 (La.1984), the trial court concluded that the absence of a juridical link prohibited tacking of the possession by Ms. Jackson’s ancestors in title to her own possession of the disputed property. The court viewed Ms. Jackson’s possession and that of her ancestors in title as unconnected acts of trespass. Judgment dismissing Ms. Jackson’s petition was signed on June 14, 2011. Ms. Jackson’s appeal followed.
DISCUSSION
Ms. Jackson argues that the trial court erred in relying on the Bowman survey and in failing to find that she had an unbroken chain of title originating in 1890 to the disputed property. She also argues that the trial court erred in failing to find that she proved ownership by acquisitive prescription of ten years.
The Herrings counter that they proved record title to the disputed property as shown by the Bowman survey and that the trial court properly rejected Ms. Jackson’s claim of acquisitive prescription of 10 years.
In accordance with the Bowman survey, the trial court found the old red house and the land on which it is situated to be part of Lot 15, the Herrings’ property. As such, the trial court rejected Ms. Jackson’s ownership claims based on her chain of title dating to 1890 and acquisitive prescription of 10 years. We agree that Ms. Jackson’s chain of title does not prove that she is the record owner of the disputed property where the old red 11(1house is located. As shown by the Bowman survey, the old red house, which Ms. Jackson’s testimony indicates has been a family homesite throughout her lifetime, is located on Lot 15, not Lot 14, and is part of the Herrings’ 28-acre tract. Even though Mr. Bowman admitted that there were errors in some of the deeds he used for the survey, nothing in the record indicates that he failed to comply with applicable standards or that his conclusions were not well-founded. We find no error on the part of the trial court in accepting the conclusions of the Bowman survey.
We also find no error in the trial court’s rejection of the claim of acquisitive prescription of 10 years. Possession of immovable property for 10 years in good faith and under just title is required to obtain ownership. La. C.C. art. 3475; Cockerham v. Cockerham, 44,578 (La.App.2d Cir.8/19/09), 16 So.3d 1264. This allows a person who purchases immovable property by a deed translative of title and who has a reasonable and objective belief that he is acquiring valid title to the property to secure the title through peaceable possession for 10 years when there has not been any disturbance by the true owner. Cockerham, supra. Though Ms. Jackson believed herself to be the true owner of the property at issue, her deed to Lot 14 does not cover the entirety of the property and is therefore not a just title upon which she can base her claim of acquisitive prescription of 10 years.
The trial court also considered whether Ms. Jackson proved acquisitive *15 prescription of 30 years. She testified at trial and argues on appeal that her relatives and ancestors in title lived in the red house for as long as she can remember and that they continuously maintained the house |nand the parcel of land until the Herrings erected the fence in 2008. However, the Herrings assert that Ms. Jackson did not plead acquisitive prescription of 30 years and that it is not a viable issue.
Under fact pleading, a party shall be granted the relief to which he is entitled under the pleadings and evidence, even if such relief is not demanded in the pleadings. La. C.C.P. art. 862; Greemon v. City of Bossier City, 2010-2828 (La.7/1/11), 65 So.3d 1263. Moreover, this court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. Based on the pleadings and evidence taken together, the trial court properly considered whether Ms. Jackson proved acquisitive prescription of 30 years and we will review the trial court’s judgment in this regard.
One may acquire ownership by acquisitive prescription of 30 years without just title or good faith possession. La. C.C. art. 3486; Cockerham, supra. For acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487; Greengrove Missionary Baptist Church v. Cox, 42,418 (La.App.2d Cir.9/19/07), 966 So.2d 707. Possession must have been continuous, uninterrupted, peaceable, public and unequivocal. La. C.C. art. 3435; Pace v. Towns, 33,071 (La.App.2d Cir.4/5/00), 756 So.2d 680. What constitutes adverse possession depends on the nature of the property and must be determined based on the facts of each case. Id.
Possession is transferable by universal or particular title, and the possession of the transferor is tacked to that of the transferee if there has 112been no interruption of possession. La. C.C. arts. 3441 and 3442. Additionally, if a party and his ancestors in title possessed for 30 years without interruption and within visible bounds more land than their title called for, the boundary shall be fixed along these bounds. La. C.C. art. 794.
Though captioned as a petitory action and request for declaratory relief, Ms. Jackson’s petition requested a survey to ascertain the limits of her property due to the Herrings’ placement of a fence that barred access to part of her property and the house located thereon. These pleadings suggest a boundary action.
In a boundary action, an owner or one who possesses as owner may demand that the boundary be fixed between contiguous lands. La. C.C. arts. 785, and 786; La. C.C.P. arts. 3691 et seq. The boundary may be fixed according to ownership or the possession of the parties. La. C.C. art. 792; La. C.C.P. art. 3693.
The petitory and boundary actions are not mutually exclusive; rather, they are “mutually complementary” with the petitory action seeking “a judicial determination of the plaintiffs ownership,” and the boundary action seeking a “judicial localization of this ownership on the ground.” Symeon Symeonides, Ruminations on Real Actions, 51 La. L.Rev. 493, 511 (Jan.1991). Issues of title and ownership may be decided in a boundary action. Pace v. Towns, supra. Title prescriptions may be pled in boundary actions and boundary prescriptions in title suits. Cuthbertson v. Unopened Succession of Tate, 544 So.2d 1236 (La.App. 3d Cir.1989), citing Ledoux v. Waterbury, 292 So.2d 485 (La.1974).
Although Mr. Bowman concluded that the old red house is located on the Herrings’ property, he also concluded that the *16 boundary of Lot 14 extends north of the highway. Bowman testified that Lot 14 runs 25 feet north of the right of way and extends 50 feet in length along the highway. Because Lot 14 extends north of the highway, it is contiguous with the Herrings’ property, and it appears that the Herrings’ fence along the north side of the highway encroaches upon Lot 14. Therefore, the boundary between these contiguous parcels of land may be fixed according to ownership or possession of the parties.
The record indicates that Ms. Jackson and her ancestors in title possessed more land than their title called for throughout her lifetime from the north boundary of the strip of Lot 14 identified by Mr. Bowman to the visible bounds of the old red house and the old fence upon which Mr. Murphy based the possession survey in 2005. Ms. Jackson’s earliest memories of visiting the property date to when she was seven years old; she was 78 at the time of trial. She indicated that family members lived on both sides of the highway and that there were two houses north of the highway. She recalled running across the road from house to house when visiting her cousin and aunts. Her recollection was corroborated by Mr. Jones, who testified that there had once been two houses north of the highway, one of which had been torn down, and one south of the highway that had been destroyed by fire. Mr. Jones testified that Ms. Jessie Lee Ford had been | ^living at the house in 1998 when he began taking care of the yard work. He also testified that he did some work on the interior of the house. He continued maintaining the property for Ms. Jackson until the fence was erected by Herrings in the latter part of 2008.
Though the trial court found that Ms. Jackson and her ancestors in title “exercised possession over Lot 15,” it did not find that Ms. Jackson satisfied the requirements of possession for the requisite 30-year period. Citing Brown v. Wood, supra, the trial court concluded that Ms. Jackson could not tack the possession of her ancestors in title to her own, which began in 2007, because there was no juridical link.
In Brown, supra, this court made a significant distinction between tacking of possession under the general prescriptive articles, La. C.C. arts. 3441 and 3442, and under La. C.C. art. 794, which pertains to boundary actions. The court explained that under Article 794 “one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries,” whereas under Articles 3441 and 3442, “tacking may be utilized to prescribe only to the extent of title.” Id., p. 574. Though a juridical link is required to effectuate tacking under Article 794, the juridical link does not have to describe the property that is the subject of the boundary dispute. This is in line with the language of La. C.C. art. 794, which states:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than by titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
11fiAs explained recently in Loutre Land & Timber Co. v. Roberts, 2010-2327 (La.5/10/11), 63 So.3d 120 (La.5/10/11), under Article 794, the deed that forms the juridical link need not include the particular property to which the possessor claims prescriptive title in order to tack onto the possession of his ancestor in title. If the possession occurs without interruption and spans 30 years, the boundary is to be fixed along the visible bounds of possession. Id. See also Marks v. Zimmerman Farms, LLC, 44,279 (La.App.2d Cir.5/20/09), 13 So.3d 768.
*17 In finding that Ms. Jackson could not utilize tacking, the trial court overlooked both that part of Brown, supra, explaining that a possessor can tack beyond title on adjacent property to visible bounds and evidence that Lot 14 includes a strip of land north of the highway that is adjacent to Lot 15. Ms. Jackson’s title, which includes the strip north of the highway, provides the juridical link needed to utilize tacking under La. C.C. art. 794 to that which is possessed beyond title and within visible bounds. The history related by Ms. Jackson along with her other evidence establishes that her ancestors in title possessed for more than 30 years and within the visible bounds of the red house and the old fence line more land than their title called for. For these reasons, we must reverse the trial court’s judgment and remand the matter for the trial court to fix the boundary between Lot 14 north of the highway and the Herrings’ property in accordance with La. C.C. art. 794 along the bounds established by the possession of Ms. Jackson and her ancestors in title, inclusive of the old red house.
| ^CONCLUSION
For the reasons stated, the judgment of the trial court is reversed and the matter is remanded for further proceedings to establish the boundary in accordance with La. C.C. art. 794 as explained in this opinion. Costs of this appeal are assessed against the Herrings.
REVERSED and REMANDED.