STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-558


MILDRED GRANTHAM

VERSUS

LOY RAY GADDIS, JR.



**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 63,648
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

**REVERSED AND RENDERED.**

**John W. Pickett**
**Attorney at Law**
**Post Office Box 250**
**Many, Louisiana 71449**
**(318) 256-3846**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Loy Ray Gaddis, Jr.**

**Ronald D. Brandon**
**Attorney at Law**
**Post Office Box 216**
**Many, Louisiana 71449**
**(318) 256-5910**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Mildred Grantham**

**CONERY, Judge.**

"Good fences make good neighbors."[1] Old fences make for boundary disputes. Plaintiff/Appellee, Mildred Grantham (Mrs. Grantham), filed a petition asking the court to set the boundary based on acquisitive prescription between property she owned and that of an adjoining landowner, Loy Ray Gaddis, Jr. (Mr. Gaddis). Mrs. Grantham, a resident of Texas since 1949, claimed she and her ancestors in title had acquired ownership by thirty-year acquisitive prescription of a contested strip of land between the two properties consisting of approximately eight acres. Mr. Gaddis answered and claimed that the "boundary" was not in dispute, that he need not prove "possession" as it was undisputed he had record title to the property in question, and that Mrs. Grantham had not possessed the property in question openly and adversely for the requisite thirty years.

After trial on the merits and the filing of post-trial memoranda, final judgment was rendered in favor of Mrs. Grantham against Mr. Gaddis. Mr. Gaddis timely appealed. Finding legal error, we reverse the trial court's judgment finding that Mrs. Grantham met the burden of proof required for thirty-year acquisitive prescription of the property in dispute and dismiss this suit with prejudice at the cost of Mrs. Grantham.[2]

---

[1] Robert Frost, Mending Wall (1916).

[2] At oral argument, counsel for Mr. Gaddis argued that he had filed a reconventional demand on behalf of Mr. Gaddis claiming acquisitive prescription of a piece of property adjoining the property in dispute. A review of the record shows that while an amended answer was filed, no reconventional demand was pled, and no prayer for relief asking that additional property be adjudicated to Mr. Gaddis was included. We will not consider that claim as this court is without jurisdiction to decide it. *See Domingue v. Bodin*, 08-62 (La.App. 3 Cir. 11/5/08), 996 So.2d 654.

## ASSIGNMENTS OF ERROR

Mr. Gaddis assigned five assignments of error on appeal. The first four assignments of error deal with acquisitive prescription and the burden of proof, and will be considered together. The fifth assignment of error deals with Mr. Gaddis' reconventional demand, which, as we indicated, is not properly before us.

## STANDARD OF REVIEW

The party pleading acquisitive prescription, in this case Mrs. Grantham, who admittedly had no just title to the property in question, is "required to bear the burden of proving" all the essential facts to support her claim of thirty-year acquisitive prescription.[3] *Hillman v. Andrus*, 11-5, p. 8 (La.App. 3 Cir 5/4/11), 63 So.3d 1164, 1170, *writ denied*, 11-1004 (La. 7/1/2011), 64 So.3d 234.

The property that is the subject of the dispute between Mrs. Grantham and Mr. Gaddis is depicted on P/1 – d/1, a plat of survey of the lands owned by Mrs. Grantham and Mr. Gaddis, with the "shaded area" encompassing the land owned by Mr. Gaddis, but claimed on the basis of thirty year acquisitive prescription by Mrs. Grantham. The plat clearly shows that the actual "boundary," as shown on the survey of the two tracts, is not in dispute and is clearly depicted.[4] Likewise, there is no dispute that Mr. Gaddis has record title to the land in question.

In its final judgment, the trial court found that Mr. Gaddis, i.e. the undisputed record owner of the property, "has not met his burden of proof for acquisitive prescription of the subject problem area," and rendered judgment in favor of Mrs. Grantham, "finding she has met her burden of proof for acquisitive

---

[3] "A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another legal right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated." La.Civ.Code art. 3483.

[4] *See* Appendix 1 attached to this opinion.

2

prescription of the subject lands. . . . This court finds that Plaintiff has had continuous, uninterrupted, peaceable, public, and unequivocal possession for a period of thirty (30) years without title."

In finding that Mr. Gaddis was required to bear the burden of proof as to the actual possession of the "subject problem area," the trial court committed legal error, which tainted its judgment. We set aside the judgment and review the record de novo. *See Bailey v. Descendants of Fowler*, 99-418 (La.App. 3 Cir. 10/13/99), 746 So.2d 130, *writ denied*, 99-3243 (La. 1/28/2000) 753 So.2d 830.

## LAW AND DISCUSSION

*Thirty-Year Acquisitive Prescription*

The following Louisiana Civil Code articles govern the requirements for Mrs. Grantham, in the absence of just title, to prove thirty years of adverse possession of the "subject problem area."

"Possession of an immovable is the detention or enjoyment of a corporeal thing." *Prince v. Palermo Land Co.*, 05-1399, p. 4 (La.App. 3 Cir. 5/3/06), 929 So.2d 831, 834. Louisiana Civil Code Article 3425 provides that "[c]orporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." In order to acquire a thing by prescription, "[t]he possessor must have corporeal possession or civil possession preceded by corporeal possession. . . . The possession must be continuous, uninterrupted, peaceable, public and unequivocal." La.Civ.Code art. 3476. Louisiana Civil Code Article 3487 provides that "possession extends only to that which has been actually possessed."

The individual claiming acquisitive prescription must also prove that she intended to possess as an owner, "adverse to the actual owner," for the required

3

thirty years. *See* La.Civ.Code art. 3424; *Phillips v. Fisher*, 93-928 (La.App. 3 Cir. 3/24/94), 634 So.2d 1305, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056.

Louisiana Civil Code Article 3442 allows "tacking" of the possession of a transferor to that of a transferee if possession has not been interrupted. "If a party seeks to prove acquisitive prescription through 'tacking,' it must establish that it and its ancestor's exercised possession of the disputed property up to a visible boundary since the subject property is not contained within its title." *Hillman*, 63 So.3d at 1170; *See also McDaniel v. Roy O. Martin Lumber Co. Inc.*, 560 So.2d 676 (La.App. 3 Cir. 1990). "The nature of the land or the use to which it is destined governs the possession necessary to support prescription." *Id*. at 680.

*Mr. Gaddis' Chain of Title*

The abstracts of title to the subject properties have been placed in evidence and are not in dispute. We find that the facts involving ownership and possession of the properties were correctly summarized in Mr. Gaddis' brief and we quote with approval as follows:

> The record reflects that sometime around November, 1927 George A. Grantham began acquiring interests in the West Half of the Northeast Quarter of Section 3, Township 8 North, Range 11 West, Sabine Parish, Louisiana. It also appears that sometime subsequent to that he and his wife moved into a house situated on what is now Defendant's land and later remodeled or re-built another frame house next to it. There is no evidence as to what agreement did or did not exist between the Granthams and the landowner at the time of occupancy. No specific dates are available. That structure still stands and is situated in the southern part of what the Trial Court called the "subject problem area". Mr. & Mrs. Grantham reared 11 children while farming property in the West Half of the Northeast Quarter of Section 3. There is no evidence of any use by G. A. Grantham of the remaining acreage in the "subject problem area" other than a garden and water well immediately adjacent to this house.
>
> Please also note that Carhee Road (a public road) runs through the middle of this tract from north to south. Any fencing necessary to

4

keep livestock off this road would of necessity need to follow it and the Gaddis' maintain such a fence. It is so identified by the Court.

All the Grantham children eventually left home and G. A. Grantham died, intestate, on November 10, 1965. At the time of his death one adult son, Chester A. Grantham, was residing with his parents. He died in 1970. Shortly thereafter Mrs. Ollie Grantham, who suffered from macular degeneration, moved into the home of one of her daughters who lived in the community. She resided there until her death in 1973. There is no evidence of any regular farming of the Grantham property or occupancy of this house (on Defendant's land) from this time until 1983, when R. E. Grantham began journeying from his home and barber business in Shreveport, Louisiana to stay periodically in the old Grantham house while he farmed (a truck patch) on part of the adjacent Grantham property and a small garden next to the house. The actual dimensions and limits of his garden are unknown.

The present Defendant, L. R. Gaddis, Jr.'s parents acquired the land upon which the house is situated on December 2, 1954. The remaining property in which the "subject problem area" lies was acquired by inheritance in 1979. Present Defendant acquired the property by donation in March, 2010. The Gaddis family has been farming, raising cattle, timber and operating commercial broiler houses on this property since acquisition. Therefore, when R. E. Grantham began these periodic appearances in the summer of 1983 the present Defendant and/or his parents or grandparents had owned and had been farming, raising cattle and conducting other agricultural activities on all or part of this land for well over thirty years. The house had been essentially abandoned since 1970 when R. E. Grantham re-appeared.

The record reflects that Mr. & Mrs. Gaddis provided R. E. Grantham with water for himself, feed for his livestock, fertilizer for his garden and fencing materials he incorporated into fences on the Grantham property (not the subject problem area). Thus, R. E. Grantham was using this house not only with the landowners consent but also with their substantial assistance. Other than the use of the house, there is no evidence R. E. Grantham ever used any other part of the "subject problem areas" with the exception of one summer when he had a small garden next to the house. There is no evidence whatsoever he was using this house, or any of the "subject problem area" with the intent to own.

In 1984, the title in the record will reflect Marlon T. Grantham, Plaintiff's husband and heir of G. A. Grantham, traded all his interest in Section 3 for 10 acres of land in Vernon Parish. He thus divested himself of any interest in any Section 3 land.

5

R. E. Grantham died testate on June 13, 1991. His entire estate went to his daughter. The evidence at trial is that shortly after the funeral this daughter, Loretta, loaded his belongings in his truck, pulled the pump out of the water well and left. She never returned. She opened his succession and recorded a Judgment of Possession on January 29, 1992, and on October 21, 1992, 16 months after R. E. Grantham's death, executed a deed for her father's undivided interest in the Grantham lands (not the "subject problem area") to Plaintiff and her husband M. T. Grantham.

After trading away their interest in this section in 1984, Plaintiff and her husband began re-acquiring undivided interest in the Grantham land in the West Half of the Northeast Quarter of Section 3 in 1992. They also began to appear periodically at the old house and began to repair it.

During all this time the Gaddis family has been farming and maintaining this property by mowing road shoulders and on more than one occasion cut and bailed hay on the open area around the house. In addition to holding title to the property, the Gaddis' were on all or part of this property on a daily basis from 1954 to present. There were no adverse acts of possession until sometime around 2004 when they were fenced off and locked out of an unspecified piece of the southern part of the "subject problem area". No notice or action by Plaintiff or any of her ancestors in title was such as to place the Gaddis on notice that Plaintiff intended to claim ownership until this time. Plaintiff erected a fence in front of the house and put up a locked gate. There is no evidence in the record of the specific location of this fence or what it actually encompasses.

Based on our de novo review of the record, we find that the trial court committed legal error when it determined that Mr. Gaddis had an affirmative duty to prove acquisitive prescription of the "subject problem area." Mr. Gaddis is the record title owner of the land, and the legal boundaries of his property are not in dispute. As previously stated, the burden of proof was squarely on Mrs. Grantham to prove "inch by inch" adverse, uninterrupted, open, and obvious, possession of the "subject problem area" for thirty years.

### Mrs. Grantham's Claim of Thirty Year Acquisitive Prescription

In *LePrettre v. Progressive Land Corp.*, 01-1660 (La.App. 3 Cir. 6/19/02), 820 So.2d 1240. In *LePrettre,* a panel of this court quoted *Fisher* and reiterated an

excellent summary of the legal requirements that must be met before a title owner can lose ownership by prescription:

> A possessor will only be considered as possessing that part of property over which he exercised *actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal and within visible bounds*. He must also prove that he intended to possess as owner, adverse to the actual owner, for the required 30 years.

*LePrettre*, 820 So.2d at 1245.

Based on the evidence in the record, Mrs. Grantham has not met the burden as summarized in *LePrettre*. At best, any "adverse" possession exercised by Mrs. Grantham's ancestor in title, George Grantham, from the time he acquired the property adjacent to the "subject problem area" in 1927 until his death in 1965, would have been possession of a house situated on a small portion of the subject problem area and a small garden adjacent thereto. His son, Chester Grantham, lived in the house until his death in 1970. There is no evidence as to what agreement, if any, existed between George Grantham and the ancestor in title to Mr. Gaddis. Mrs. Ollie Grantham, George Grantham's widow, left the home after Chester Grantham's death in 1970 and died in 1973.

Assuming arguendo that a claim for acquisitive prescription to the old house and adjoining garden could have been made by George Grantham or his heirs, the evidence is uncontradicted that the old house and "garden" were abandoned in 1970 when Chester Grantham died, and Ollie Grantham, then legally blind, moved in with one of her daughters until her death in 1973. Mrs. Grantham testified that she believed Ollie Grantham continued to live in the house until her death in 1973, but her testimony was not corroborated. Nevertheless, the Gaddis family continued to farm the land in the "subject problem area" during this time period.

7

There is no evidence of anyone living in the house or farming the subject property until 1983, when Robert Elisha Grantham (R. E. Grantham), one of George's sons who lived in Shreveport, began to stay periodically in the old house and planted a small garden next to it, while he farmed a larger "truck patch" on adjacent property owned by the Granthams which was not on "the subject problem area". There is no evidence that R. E. Grantham used any other portion of the "subject problem area" except for purposes of a small garden adjacent to the old house. R. E. Grantham died in 1991.

After his death, Mary Loretta Gilcrease (Loretta), R. E. Grantham's daughter, loaded all movables and personal possessions located at the house in a truck and pulled the pump out of the water well and left, never to return. A judgment of possession in R. E. Grantham's succession was filed on January 29, 1992. The judgment placed Loretta in sole possession of all of R. E. Grantham's property, but makes no mention of the old house or the "subject problem area" therein.

In order to succeed in claiming acquisitive prescription of the "subject problem area," Mrs. Grantham had the burden of proving possession since at least 1981. To do so, she would have to "tack" possession to her ancestors. *See* La.Civ.Code art. 3442. However, in order to take advantage of the tacking provisions of La.Civ.Code art. 3442, there must have "been no interruption" of the prior possession.

Mrs. Grantham does not dispute that "Possession is lost, when the possessor manifests his intention to abandon it." La.Civ.Code art. 3433. "The right to possess is lost upon abandonment of possession." La.Civ.Code art. 3434.

We find, at best, that George, Ollie, and R. E. Grantham were "precarious possessors" of the house and adjacent garden only. R. E. Grantham's possession

of the house and garden was not only with the consent of the Gaddis family, but with their assistance as well.

Mrs. Grantham and her husband, Marlon T. Grantham, did not acquire an interest in the Grantham property adjoining the "subject problem area" until 1992. In the interim, the Gaddis family continued to use the property in dispute for farming. They mowed and baled hay around the old house, using much of the subject problem area on a daily basis for growing timber and management of their cattle and commercial broiler operation.

In 2002, Mrs. Grantham placed a fence around the old house, and in 2004, some of the "subject problem area" was fenced by Mrs. Grantham, though the exact portion fenced is not established in the record.

Simply put, the evidence does not support "actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal and within visible bounds" with proof of intent "to possess as owner, adverse to the actual owner, for the required 30 years." *LePrettre*, 820 So.2d at 1245 (quoting *Fisher*, 634 So.2d 1305).

### *Fencing As Proof of Thirty-Year Acquisitive Prescription*

On appeal, Mrs. Grantham argues that La.Civ.Code art. 794 and the case of *Jackson v. Herring*, 46,870 (La.App. 2 Cir. 1/25/12), 86 So.3d 9, *writ denied*, 12-1452 (La. 9/27/13), 123 So.3d 727, support her claim for acquisitive prescription. Louisiana Civil Code Article 794 states:

> When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.

In *Jackson*, the plaintiff, Everlee Jackson (Ms. Jackson), who was seventy-eight years old at the time of the litigation, asserted ownership of property acquired by her in 2007 by virtue of what the trial court determined was thirty-year acquisitive prescription. The property at issue was part of a twenty-eight acre tract, which included what is referred to as an "old red house" that was purchased by the defendants, Billy and Edith Herring (the Herrings), in 1994. In November 2008, the Herrings erected a new fence blocking Ms. Jackson's access to the "old red house."

In *Jackson*, the court found that the evidence presented at trial allowed Ms. Jackson to tack her possession of the property to the uninterrupted possession of her ancestors. Thus, the possession of the "old red house" and everything the old fence surrounded was acquired by Ms. Jackson based on thirty-year acquisitive prescription. *See* La.Civ.Code arts. 794 and 3442; *Hillman*, 63 So.3d 1164. The appellate court ordered that the trial court fix the boundary between the two properties in accordance with La.Civ.Code art. 794, "according to limits established by prescription rather than titles." Therefore, the boundary in that case was established "within visible bounds," which included the "old red house" and along the visible old fence line.

Mrs. Grantham argues that *Jackson* is applicable based on the old pasture fencing shown on the 2004 survey submitted into evidence and the testimony that there was old fencing on the eastern side of Carhee Road which was also shown on the 2004 survey. However, the evidence at trial established that the "old fence" was placed there by a previous owner to keep cattle in and off the adjoining road and was not placed as a boundary marker. Mrs. Grantham's attempt to use this "old fence" as evidence of possession to support acquisitive prescription is not

10

supported by the record. The record evidence in this case, as opposed to the record evidence in *Jackson*, does not support the requirement that there had been open, continuous, uninterrupted possession by Mrs. Grantham of the "subject problem area." *See* La.Civ.Code art. 3442.

As previously stated, the old house in this case was abandoned by the Granthams following the death of George in 1965 and Chester in 1970. There was no evidence that George, Ollie, or Chester actually possessed any of the property in the "subject problem area" adversely to the Gaddis' ancestors in title. Whatever possession had been exercised over the small house and garden adjacent thereto was abandoned in 1970. R. E. Grantham did not begin to use the old house and garden until 1983, and then only with the permission and help of the Gaddis family. His possession ended at his death in 1991 and in 1992, when his daughter, Loretta, moved everything out of the old house and pulled up the water well.

Mrs. Grantham acknowledged during her testimony at trial that the old house was used as a "camp" after she and her husband, Mr. Grantham, began to acquire the adjacent properties in 1992. Mr. Randy Byrd, an employee of the Belmont Water System and a neighbor of the parties, testified that when the Belmont Water System came on line in 1994, a water meter was requested by Mr. Grantham, who paid a deposit, and the water was turned on in the old house. However, in 1995, Mr. Grantham requested that the water be turned off as he had suffered a stroke. Mr. Byrd testified that Mr. Grantham told him that he did not know if they would be coming to use the place and the water bill was just an expense they did not need. Mr. Byrd testified that water service was reestablished at the request of Mrs. Grantham sometime in 2004 or 2005.

Additionally, Mrs. Grantham and/or her agents destroyed any old fences on the property, and, therefore, there is no evidence of the extent of any visible possession associated with the old house. These actions by Mrs. Grantham and/or her agents were confirmed at trial by her son, Mr. Marlon Wayne Grantham, who acknowledged that none of the old fencing west of Carhee Road was ever maintained by Mrs. Grantham and that the old house was unlivable when Mr. and Mrs. Grantham purchased the adjacent property in 1992. He also testified that, at the behest of his mother, he tore out all of the fencing associated with the old house prior to the placement of the present fencing completed in 2004.

The new fencing was not depicted on the 2004 survey submitted into evidence at trial by Mrs. Grantham. In fact, the surveyor who conducted the survey in 2004 for Mrs. Grantham admitted that the old Gaddis pasture fence was included on the survey in order "to provide the Plaintiff with a point to make a claim." Mrs. Grantham acknowledged that after the 2004 survey was conducted, she knew that the old house and fencing were part of the adjacent Gaddis property and she did not hold record title to the "subject problem area."

Based on the evidence adduced at trial, we find that La.Civ.Code art. 794 and *Jackson* do not apply to the facts in this case. There is insufficient evidence that the old Gaddis pasture fence operated as a boundary between the Gaddis and Grantham properties, and no evidence that Mrs. Grantham or her ancestors in title possessed the "subject problem area" as owners adversely to the record title owner, Mr. Gaddis, for the requisite thirty years of open, continuous, and uninterrupted possession with intent to acquire as owner. *See LePrettre*, 820 So.2d 1240.

## CONCLUSION

For the reasons assigned, the judgment of the trial court is reversed and set aside, and this suit is hereby dismissed with prejudice at the cost of Mildred Grantham. All costs of this appeal are assessed to Mildred Grantham.

**REVERSEDAND RENDERED.**

Appendix 1

