STEWART, J.
| tin this concursus proceeding, Defendants/appellants, the Osborne Heirs, appeal a judgment that they failed to meet their burden of proving ownership by 30-year acquisitive prescription of an undivided 1/2 interest in property located in Jackson Parish, Louisiana. Defendants/appel *76 lants, the Ford Heirs, appeal that portion of the judgment finding that the Clifford Osborne Heirs met their burden of proving ownership by 10-year acquisitive prescription of 10 acres of the property in Jackson Parish, Louisiana. For the reasons stated herein, the judgment of the trial court is affirmed in part and reversed in part and the matter is remanded to the trial court for further proceedings.

FACTS

This proceeding involves ownership of gas royalties derived from a tract of land comprising the following (approximate) 100 acres[1] in Jackson Parish, Louisiana (“the disputed property”):
The East Half of the Northeast Quarter and the North Half of the Northwest Quarter of the Northeast Quarter of Section 24, Township 16 North, Range 3 West, Jackson Parish, Louisiana.
The land was acquired by Emanuel Osborne,[2] a widower, after his remarriage to Organ Ford,[3] a widow, on July 1, 1900. Emanuel had 10 children from his prior marriage and Organ had 15 children from her prior |2marriage. The couple did not have children together. Organ died in 1927 and Emanuel died in 1938. No succession proceedings were filed for either of them. The dispute over the ownership of the disputed property (mineral interest) is between the two branches of the family, the Osborne Heirs and the Ford Heirs.
EOG Resources, Inc. (“EOG”),[4] was the operator of the LOCA RA SUG Unit containing the disputed property, which produced several successful wells. The Osborne Heirs claim ownership by 30-year acquisitive prescription of the undivided 1/2 interest that would have devolved to the Ford Heirs. In addition, there are two subparts of the disputed property that are claimed by certain of the Osborne Heirs. First, the Clifford Osborne Heirs (four of them) claim ownership by 30-year acquisitive prescription of a certain 20 acres referred to as “Clifford’s Farm.” Second, William and Rebecca Hopkins (William is an Osborne Heir) claim ownership via 10-year acquisitive prescription of a 20-acre tract referred to as the “Fenced Parcel.” There are also two other subparts referenced in the record, the “Lost 20” acres, which are 20 acres that were inexplicably dropped from the tax rolls of Jackson Parish, and the South 46 acres.

Breakdown of the Disputed Property:

In 1901 Emanuel purchased 60 acres-the SE 1/4 of the NE 1/4 and the S 1/2 of the NE 1/4 of the NE 1/4 of Section 24, Township 16 N, Range 3 W. This 60 acres includes a 40-acre parcel allegedly transferred from IsEmanuel to his son Amos, discussed infra, and the Lost 20 (hereinafter referred to as “the 60 acres”). Aecord- *77 ing to the Osborne Heirs, this acreage was transferred into their names in 2001.
There is also a 20-acre parcel in the N 1/2 of NE 1/4 of NE 1/4 that the Osborne Heirs contend (on appeal) was not part of the community of Emanuel and Organ because there is no evidence of how Emanuel acquired of the property. Amos, however, according to the Osborne Heirs, purchased this 20-acre parcel (hereinafter referred to as “the Fenced Parcel”) at tax sale in 1932. It was subsequently transferred to another Osborne Heir by partition in 1981 and then purchased by the Hopkins in 1995 and 1996. Mr. Hopkins testified that he fenced the entire parcel more than 10 years prior to trial.
In 1907 Emanuel purchased the NW 1/4 of the NE 1/4 of Section 24, Township 16 N, Range 3 W, containing 40 acres. Only 20 of this 40-acre parcel are in the unit at issue in this case. This is the 20 acres claimed to be Clifford’s Farm (hereinafter referred to as “Clifford’s Farm”).
Together, the 60 acres (40 transferred to Amos in 1901 and the Lost 20), plus the 20 acres ultimately sold to the Hopkins called the Fenced Parcel, plus the 20 acres referred to as Clifford’s Farm, comprise the 100 acres of disputed property.
EOG filed this concursus proceeding on February 18, 2010, to determine ownership of the undivided 1/2 interest in the mineral rights on the disputed property. EOG named 229 defendants in the original petition and deposited $2,751,551.32 in the registry of the court. Again, it was undisputed that the Osborne Heirs owned one undivided 1/2 interest. The | ¿instant dispute is whether the Ford Heirs owned the other undivided 1/2 interest in the disputed property or whether the Osborne Heirs, the Clifford Osborne Heirs and/or Mr. Hopkins had acquired ownership interest by 30-or 10-year acquisitive prescription. By agreement, the trial was bifurcated and the issue of ownership of the property was tried on May 15-16, 2012.

ACTION OF THE TRIAL COURT

The trial judge stated that all parties agree that the disputed property was acquired during the marriage and, therefore, was community property with Organ and Emanuel each owning an undivided 1/2 interest in it. However, the Osborne Heirs claim on appeal that the Fenced Parcel was never part of the community and, as stated above, was bought by Amos at tax sale. In any event, the trial judge found that, on Emanuel’s death, an undivided 1/2 interest in the disputed property devolved to the Osborne Heirs. The record contains no evidence that any portion of the disputed property was transferred by Organ during her lifetime. Thus, following Organ’s death, the remaining undivided 1/2 interest devolved to the Ford Heirs and, together, the two sets of heirs became co-owners of the property.[5] Debra Reeks, an independent abstractor, provided uncontradicted testimony that the disputed property was in the name of Em-anual Osborne during his marriage to Organ and that there had been no transfers of the property by any of the Ford Heirs except for the transfer by several Ford Heirs to C.C. |fiCopeIand, which was later purchased at tax sale by T.S. Pesnell, discussed infra.
In thoughtful and thorough reasons for judgment, the trial judge outlined the *78 evidence supporting her conclusion that the Osborne Heirs failed to satisfy their burden of proof that they had acquired ownership of the undivided 1/2 interest that they originally co-owned with the Ford Heirs regarding 90 of the 100 acres. The trial judge found that the Clifford Osborne Heirs met their burden of proving ownership by 30-year acquisitive prescription of 10 acres (not the 20 they sought) known as Clifford’s Farm. The acreage of Clifford’s Farm was reduced based on the trial court’s finding that the 20 acres were not clearly delineated; however, according to the trial judge, 10 of the 20 acres appeared on the map and survey to be carved out and in use by the Clifford Osborne Heirs (hereinafter referred to as “Clifford’s 10 Acres”). This appeal by both sets of hems ensued.[6]

DISCUSSION

As previously stated, on appeal, the Osborne Heirs challenge the trial judge’s ruling that they failed to satisfy their burden of proof with regard to the 60 Acres, the Fenced Parcel and the eastern 10 acres of Clifford’s Farm. Specifically, the Osborne Heirs assign 12 errors, challenging various factual findings of the trial judge, all of which are addressed herein. The Ford Heirs appeal the portion of the judgment awarding the Clifford Osborne Heirs ownership of Clifford’s 10 acres.

\ «Legal Principles

Acquisitive Prescription of 10 Years:

Ownership and other real rights in immovables may be acquired by the prescription of 10 years. La. C.C. art. 3473. Possession of immovable property for 10 years in good faith and under just title is required to obtain ownership. La. C.C. art. 3475; Jackson v. Herring, 46,870 (La.App.2d Cir.1/25/12) 86 So.3d 9; Cockerham v. Cockerham, 44,578 (La.App.2d Cir.8/19/09), 16 So.3d 1264. This allows a person who purchases immovable property by a deed translative of title and who has a reasonable and objective belief that he is acquiring valid title to the property to secure the title through peaceable possession for 10 years when there has not been any disturbance by the true owner. Jackson, supra.
For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses. La. C.C. art. 3480, The trier of fact must ascertain in the light of objective considerations whether a reasonable person in the position of the possessor could believe himself to be the owner. Comment (c) to art. 3480. Although good faith is presumed, this presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses. See La. C.C. art. 3481; Cockerham, supra.
A just title is a juridical act that is sufficient to transfer ownership or another real right. La. C.C. art. 3483. The act must be written, valid in form and filed for registry in the conveyance records of the parish in which the immovable is situated. Id.; Cockerham, supra.

11Acquisitive Prescription of 30 Years:

One may acquire ownership by acquisitive prescription of 30 years without just title or good faith possession. La. C.C. art. 3486; Jackson, supra; Cockerham, *79 supra. For acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487; Marks v. Zimmerman Farms, L.L.C., 44,279 (La.App.2d Cir.5/20/09), 13 So.3d 768; Greengrove Missionary Baptist Church v. Cox, 42,418 (La.App.2d Cir.9/19/07), 966 So.2d 707, writ denied, 2007-2064 (La.12/14/07) 970 So.2d 537.
Possession must have been continuous, uninterrupted, peaceable, public and unequivocal. La. C.C. arts. 3435 and 3476; Pace v. Towns, 33,071 (La.App.2d Cir.4/5/00), 756 So.2d 680. What constitutes adverse possession depends on the type or nature of the property and must be determined based on the facts of each case. Liner v. La. Land & Exploration Co., 319 So.2d 766 (La.1975); Ryan v. Lee, 38,352 (La.App.2d Cir.4/14/04), 870 So.2d 1137, writ denied, 2004-1531 (La.10/1/04), 883 So.2d 991. In other words, activities showing possession of agricultural land will be different from those activities commensurate with possession of woodlands or swamplands. Id.
Generally, an owner in indivisión cannot acquire by prescription the rights of his co-owners in the property held in common. Possession by one co-owner is generally considered as being exercised on behalf of all co-owners. Cockerham, supra, and cases cited therein. A well-settled exception to the general rule is recognized in those instances where the | ^possessing co-owner gives notice to the other co-owners that he intends to possess as owner adversely and contrary to the common interest. Under such circumstances, one owner in common may prescribe against a co-owner provided such possession be clearly hostile and notice be given thereof. Cockerham, supra, citing Franks Petroleum, Inc. v. Babineaux, 446 So.2d 862 (La.App. 2d Cir.1984), and Givens v. Givens, 273 So.2d 863 (La.App. 2d Cir.1973), writ refused, 275 So.2d 868 (La.1973). Actual notice to other co-owners of the possessing co-owner’s intent to possess for himself is not necessary. Id.
The exception to the general rule is reflected in La. C.C. arts. 3439 and 3478. Article 3439 provides that a co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner. Article 3478 provides that a co-owner, or his universal successor, may commence to prescribe when he demonstrates by overt and unambiguous acts sufficient to give notice to his co-owner that he intends to possess the property for himself. In determining whether a particular case falls within the exception rather than the general rule, this court has held that mere occupancy, use, payment of taxes and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. Givens, supra.
The notion of constructive possession is applicable to both 10- and 30-year acquisitive prescription. La. C.C. art. 3426, comment (c). One who possesses a part of an immovable by virtue of title is deemed to have constructive possession within the limits of his title. In the absence of title, one has possession only of the area he actually possesses. La. C.C. arts. |c)3426 and 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. La. C.C. art. 3426, comment (d). According to well-settled Louisiana jurisprudence, an enclosure is any natural or artificial boundary. Brunson v. Hemler, 43,347 (La.App.2d Cir.8/13/08), 989 So.2d 246, writ denied, 2008-2297 (La.12/12/2008), 996 So.2d 1119; Secret Cove, L.L.C. v. Thomas, 2002-2498 (La.App. 1st Cir.11/7/03), 862 So.2d 1010, writ denied, 2004-0447 (La.4/2/04), 869 *80 So.2d 889, citing La. C.C. art. 3426, comment (d). The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Brunson, supra.
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for 30 years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. La. C.C. art. 794; Loutre Land & Timber Co. v. Roberts, 2010-2327 (La.5/10/11), 63 So.3d 120; Jackson, supra.
The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it, including possession for the requisite years. McClendon v. Thomas, 1999-1954 (La.App. 1st Cir.9/22/00), 768 So.2d 261. Whether the disputed property has been possessed for 30 years without interruption is a factual issue and will not be disturbed on appeal unless there is a showing of abuse of discretion orjj^manifest error. Garner v. Holley, 42,477 (La.App.2d Cir.10/3/07), 968 So.2d 234. In additional, boundary location is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. Secret Cove, L.L.C., supra.

The Disputed Property

In the case sub judice, none of the heirs attempted to prove an unbroken chain of valid transfers from the sovereign or a common ancestor, but, instead, sought to demonstrate that they acquired ownership of the disputed parcel(s) by either 10- or 30-year acquisitive prescription. We now turn to the disputed parcels and will address each in turn.

The 60 Acres (40 plus the Lost 20)

Recall that the 60 acres comprising the 40 acres allegedly transferred in 1901 from Emanuel to his son, Amos, and restated in the 1931 deed, plus the Lost 20.
First, the judge correctly concluded, as did the parties, that it was not possible to show any logical title to the disputed property from the public records because the filings were sporadic and incomplete. Second, we find no error in the trial judge’s conclusion that the recorded instruments fail to supply the notice to co-owners required for a 30-year acquisitive prescription claim. Specifically, the trial judge discredited as ambiguous the 1931 deed of 40 acres from Emanuel to Amos. She noted that the deed stated that the original 1901 deed had been lost and that the 40 acres had been acquired by Emanuel while his first wife was alive. The Osborne Heirs argue that the 1931 deed is a reformation of the 1901 deed; however, the judge found the 1931 deed to be ambiguous as to what 40 acres was conveyed and Ininsufficient to serve as notice to the Ford Heirs that the Osborne Heirs were claiming adverse possession through Amos. A review of the 1931 deed reveals that it does not contain an adequate recitation of the terms of the alleged 1901 deed to constitute a reformation. In addition, we find that the trial judge’s finding that the 1931 deed is insufficient to provide the notice required to be a reasonable finding.
The Osborne Heirs also pointed to a 1934 deed from Amos to four of the Ford Heirs covering 50 acres in Section 18, T16N, R2W, which they characterize as a “buy-out” of the Ford Heirs’ interest in the disputed property. The Osborne Heirs assert that the deed represents the *81 Ford Heirs’ acceptance of the 50 acres for the stated consideration of $70 and “a partition among the heirs of Manual Osborne and Oragan Ford Osborne, both deceased.” However, the trial judge discounted the import of this deed because only four of the Ford Heirs were named and the property described is not the disputed property. We agree that this document transferring property in Section 18 does not put all of the Ford Heirs on notice that the Osborne Heirs were asserting ownership of the disputed property in Section 24. Specifically, we note that the deed states consideration of some other “partition,” but that partition is not defined in terms of parties or land. There is no indication that the land partitioned, if any, was the disputed property in Section 24.
The Osborne Heirs also introduced three other partition documents as evidence of their notice to the Ford Heirs that they intended to claim ownership of the disputed property: 1) 1964 partition among six heirs including a part of the disputed property, 2) 1970 partition among nine heirs | ^including a part of the disputed property and 3) a 1981 partition among the Osborne Heirs including a part of the disputed property. The trial judge concluded that these partitions were problematic because none of them included all of the disputed property and only the third one included all of the heirs. She also noted that, prior to these partitions, in 1964, some of the Ford Heirs transferred their interests in parts of the disputed property to one C.C. Copeland. The judge concluded that the Ford Heirs (at least the seven involved in the transfers to Copeland) believed that they had ownership in the disputed property. This finding is supported by the record. At best, these instruments illustrate much activity and confusion as to the ownership of the disputed property.
Finally, the judge noted that there were other recorded instruments such as sales of mineral and timber leases executed over many years by both Osborne and Ford Heirs, which run counter to any argument of ownership by acquisitive prescription. This finding is also supported by the documentary evidence. In short, the record does not contain evidence by recorded instrument of notice to the Ford Heirs that the Osborne Heirs intended to own the 60 acres contrary to the common interest of the Osborne and Ford Heirs. Cockerham, supra.
In addition, we find no manifest error in the trial judge’s conclusion that the Osborne Heirs failed to provide evidence of overt, unambiguous acts hostile to the Ford Heirs’ interest that would, in any way, support a finding of adverse possession of 80 years. Franks Petroleum, Inc., supra; Givens, supra. The Jackson Parish tax assessor, Eddie Gatlin, testified that none of the various parcels making up the 100 acres of disputed property were 113assessed to the Ford Heirs. However, Mr. Gatlin also testified that the tax rolls are not definitive evidence of ownership. Testimony was adduced from' several Ford Heirs that money was collected from them for the payment of taxes on the disputed property and each Ford Heir testified that he or she believed that taxes on the property were being paid on their behalf. In addition, several parcels were listed on the tax rolls under the names C.C. Copeland and T.S. Pesnell, who were vendees of certain of the Ford Heirs. Furthermore, regarding the Lost 20, Mr. Gatlin could not explain why this acreage was actually dropped from the tax rolls for many years. The tax rolls, by themselves, do not establish notice sufficient to support a claim of adverse possession as against co-owners. Givens, supra.
*82 Regarding activity on the 60 Acres, the trial judge made a considered comparison of five aerial photographs of the disputed property in 1955, 1960, 1967, 1980 and 2010, finding little guidance as to use of the property. Our review of these exhibits leads us to a similar conclusion. While there are slight changes in the gradation of coloring indicating some clearing such as the cutting of timber, there are no indications of continuous use of any particular areas of the property.
In summary, the trial judge held that the Osborne Heirs, generally, failed to satisfy their burden of proof of ownership of the 60 acres by 30-year acquisitive prescription. After an exhaustive review of the record and exhibits, we find no manifest error in the trial judge’s findings and no abuse of discretion in her conclusion. Gamer, supra.

The Fenced Parcel

114The 20 acres comprising the Fenced Parcel was claimed by the Hop-kinses under 10-year acquisitive prescription. As previously noted, the element of just title was not disputed because Mr. Hopkins obtained the property via warranty deeds in 1995 and 1996.[7] Next, the judge correctly noted that good faith is presumed; therefore, the Ford Heirs had the burden of proving that the Hopkins were in bad faith while the Hopkins had the burden of proving continuous, uninterrupted, peaceable, public and unequivocal possession for 10 years. Again, Mr. Hopkins acquired the property via warranty deed and there was no credible evidence presented by the Ford Heirs that he did not “reasonably believe, in light of objective circumstances, that he was the owner” of the propei'ty following the sale. La. C.C. art. 3480. Therefore, the trial judge was not manifestly erroneous in concluding that the Ford Heirs failed to rebut the presumption of good faith on the part of the Hopkins.
Likewise, however, there was no credible evidence presented by the Hopkins that they enjoyed exclusive, peaceful, public, uninterrupted, continuous and unequivocal possession for 10 years prior to the filing of the concursus proceeding. Mr. Hopkins testified that he fenced the parcel shortly after he purchased it in 1995 and 1996. The trial judge elected to discredit this testimony in light of testimony from Robert Davis, a forester, who cruised the property in 1999 and did not see evidence of a fence. In addition, a survey completed in 2000 by William T. Lowe does not show a fence around the parcel. Admittedly, a 2010 survey by Messinger & | ^Associates does reveal a fence around the parcel, but there is no indication from the survey or any testimony as to when the fence was constructed. We will not disturb credibility determinations of the trial judge. Rosell v. ESCO, 549 So.2d 840 (La.1989). The record reasonably supports the trial judge’s conclusion that the Hopkins failed to prove that they possessed a delineated parcel for 10 years prior to trial.

Clifford’s 10 Acres

The Clifford Osborne Heirs testified that Clifford and his sister Donisha used this parcel of 20 acres as a farm. There are two structures on the parcel. The first structure is located in the western portion of the parcel, was historically occupied by Clifford and, according to the testimony, appeared to be occupied at the time of trial. The second structure is lo *83 cated in the eastern portion, was historically the residence of Donisha, but was abandoned at the time of trial. There was testimony that there was a smoke house and a “green patch,” or garden, on the property and that, historically, Clifford had areas fenced for horses and cows. Based on this testimony, the trial judge found that the Clifford Osborne Heirs met their burden of proving possession for 30-year acquisitive prescription, but only for the western 10 acres of the 20-acre parcel. The trial judge referred to the survey by Messinger & Associates superimposed onto the aerial photograph to carve out the portion of the 20 acres that appeared to have been possessed by Clifford Osborne. The Clifford Osborne Heirs concur with the trial judge’s finding that they established ownership of the west 10 acres of this parcel. However, they argue that the judge erred in not finding the same continuous use and possession of the east 10 acres of the parcel.
|1fiThe Ford Heirs argue that the record is replete with testimony that members of both families used the property encompassing the 20 acres known as Clifford’s Farm for hunting, fishing, running dogs and other recreational activities. They contend that the record contains no evidence that there was uninterrupted possession of the land by either family. Furthermore, they assert that any fencing on the property was for the containment of livestock for convenience and was not used as a boundary or to prevent entry of other co-owners. Simply stated, the Ford Heirs argue that the Clifford Osborne Heirs presented no proof of public, unequivocal possession. The Ford Heirs assert that they contributed to the payment of ad valorem taxes on the property, hunted and fished on the property, cut timber and executed mineral leases covering the property. They further note that the Osbornes were aware of the Fords’ participation in a hunting club on the property and that, at times, Gilbert Jackson drove logging trucks on the property. In sum, the Ford Heirs argue that the evidence simply does not support a finding that the Clifford Osborne Heirs established ownership of the 10 acres awarded to them as Clifford’s Farm by 30-year acquisitive prescription. We agree.
Much of the testimony in the record is confusing and unclear due to the many years that have passed and the difficulty on the part of the witnesses to recall dates and accurately read the survey and locate certain places on the aerial photograph. What is clear from the testimony taken as a whole, however, is that members of both the Osborne and Ford families utilized the disputed property, including Clifford’s 10 acres, for purposes commensurate with the nature of the property. Gilbert Jackson and Larry 117Wiley, both Ford Heirs, hunted and fished the property without restriction. Members of both families participated in a hunting club on the property. Mr. Wiley testified that he has a deer stand on Clifford’s 10 acres and located the stand on the aerial photograph. None of the witnesses indicated that anyone, at any time, denied them permission to hunt any of the disputed land. In addition, Mr. Jackson (Ford Heir) testified that he asked permission as a courtesy to haul cut timber over the area around Clifford’s residence, but he also testified that he believed the Ford Heirs owned an interest in the land and his request was only that, a courtesy to Clifford. Based on this record, we find that the trial judge erred in concluding that the Clifford Osborne Heirs proved continuous, uninterrupted, peaceable, public and unequivocal possession of Clifford’s 10 acres. La. C.C. arts. 3435 and 3476; Pace, supra.
Even if there had been adequate possession, however, we further find that *84 the Clifford Osborne Heirs failed to prove a delineated boundary sufficient to support the award of 10 acres. Frank Messinger, who completed the survey of the disputed property, testified that there were no “posted” signs or wildlife management signs on the property. He further testified that no part of Clifford’s Farm, or the smaller portion (Clifford’s 10 acres), was fenced. The aerial photograph does indicate a cleared portion in the western half of the Clifford’s Farm 20 acres, but there are no boundaries, fences, markers or any evidence of current or former use that would support the carving out of a specific portion of the property as having been continually possessed for 30 years. The finding to the contrary is manifestly erroneous.
|isln summary, the totality of the evidence presented in this case, both documentary and testimonial, reveals that both Osborne and Ford Heirs have enjoyed, used and “possessed” the disputed property over the past decades in ways that are commensurate with the nature of the property, i.e., hunting, fishing, timber cutting, and oil and gas leasing. Liner, supra. The Osborne Heirs failed to meet their burden of proving ownership by acquisition prescription of any portion of the disputed property.

DECREE

For the foregoing reasons, the judgment of the trial court awarding to the Clifford Osborne Heirs an undivided one-half interest in the west 10 acres of the N/2 of NW/4 of NE/4 of Section 24, T16N, RBW, Jackson Parish, Louisiana is reversed. Judgment is rendered in favor of the Ford Heirs recognizing them as co-owners with the Osborne Heirs of these aforementioned 10 acres. The judgment as to the remaining 90 acres, recognizing the Ford Heirs as co-owners with the Osborne Heirs, is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are to be borne by the Osborne Heirs.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. The parties refer to the disputed property as 106 acres; however, apparently, there was some property also owned by the Osbornes that continued into adjacent sections — other than that which is at issue herein. The property described in the petition comprises 101.6 acres. The parties agree that the disputed property is, more or less, 100 acres.

. Emanuel’s first name is spelled various ways throughout the record, including Emanuel, Emanual, E. Manual and Manual. For clarity, we will use the spelling Emanuel throughout this opinion.

. Emanuel’s wife’s first name is also spelled various ways throughout the record, including Organ, Argon and Oregon. For clarity, we will use the spelling Organ throughout this opinion.

. On the morning of trial, due to an assignment after the petition was filed, Premier Natural Resources II, LLC, was substituted as the party plaintiff. Premier has filed a brief on appeal indicating that it is merely the stakeholder herein and makes no argument on the merits of the case.

. We are not persuaded by the Osborne Heirs’ attempt on appeal to claim that certain portions of the disputed property was not actually in the community of Emanuel and Organ. The trial judge noted that this was not a disputed issue and the Osborne Heirs admitted the same in their post-trial brief to the trial court.

. We note that the action was bifurcated by agreement of the parties and the trial judge, with the issue of ownership tried first. Even though the action was divided, the resulting determination of ownership of the stake effectively terminates the litigation, leaving only the computation and distribution of the stake, Therefore, the judgment deciding ownership js ripe for review on appeal,

. Note that, in light of our earlier findings regarding the incomplete public records and title, we conclude that Mr. Hopkins did not receive clear title to the Fenced Parcel contrary to the Osborne Heirs’ argument.