KNOLL, J.,
dissenting.
11 This case requires the Court to determine whether or not John Walter Bou-dreaux (“Boudreaux”) possessed the real right at issue as “owner,” thereby acquiring by acquisitive prescription of thirty years a predial servitude of passage,[1] or whether he exercised this real right merely as a “precarious possessor” — that is, “with the permission of or on behalf of’[2] Paul Christopher Cummings (“Cummings”) and his ancestors in title, the Weills. In my view, the majority opinion eviscerates the well-established burden-shifting structure laid out in our Civil Code, allowing Cummings to prevail based simply on an assertion of “neighborliness,” despite his failure to put on any evidence that Boudreaux used the passage way with “permission” as required by the Louisiana Civil Code article 3437. Accordingly, I respectfully dissent from the majority opinion and would affirm the District Court’s judgment recognizing Boudreaux has obtained a predial servitude of passage by thirty years acquisitive prescription.
The party asserting acquisitive prescription bears the burden of proving all | ¡Tacts that are essential to support it.[3] Because Boudreaux is the party asserting acquisitive prescription, he bears the burden of proving all the facts that are essential to support it, including possession for the requisite number of years.[4] However, as the Third Circuit explained in Town of Broussard v. Broussard Volunteer Fire Dept., 357 So.2d 25 (La.App. 3 Cir.1978), interpreting the predecessor of Louisiana Civil Code 3427,[5] “The possessor is aided in this burden by a presumption that he possessed as owner.”[6] Under Louisiana *566 Civil Code article 3427, “One is presumed to intend to possess as owner unless he began to possess in the name of and for another.” The 1982 Revision Comment (d) to article 3427, however, provides that the presumption set forth in this article does not arise “[w]hen it is shown that the possession was begun for another.” (emphasis added). If the presumption does arise, the opponent of the plea of prescription — here, Cummings — then bears the burden of rebutting this presumption, which he may do by proof that the proponent’s possession was precarious. According to Louisiana Civil Code article 3437, “The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession.” If Cummings proves Bou-dreaux’s possession was “with the permission of or on behalf of the owner,” only then does a presumption arise under Louisiana Civil Code article 3438: “A precarious possessor, such as a lessee or a depositary, is presumed to possess for another although he may intend to possess for himself.” (emphasis added). Should this presumption arise, Boudreaux could rebut it under Louisiana Civil Code article 3439, provided he presented proof that he has given “actual notice of [his intent to possess for himself] to the person on whose behalf 13he is possessing.” (emphasis added).
Applying this burden-shifting framework, the threshold question is whether or not the presumption of ownership found within this article arises at all. According to Revision Comment (d) of Louisiana Civil Code article 3427, “When it is shown that the possession was begun for another, the presumption set forth in this article does not arise.” (emphasis added). In positive terms, the presumption of ownership does arise absent a showing that the possession was begun for another. Therefore, the initial question is whether there is a positive showing on the record that Boudreaux’s “possession was' begun for another.” Although Cummings strenuously asserts that Boudreaux began his possession with the permission of the Weills, neither the evidence nor the testimony at trial supports this assertion. While witnesses, including Boudreaux and his wife, agreed that the Weills and the Boudreauxs had a good relationship and some witnesses, including Boudreaux’s wife, testified the Weills knew about Boudreaux’s gate and his use/maintenance of the access road and did not object, no one testified that the Weills had ever granted Bou-dreaux permission to use the property. In fact, Boudreaux explicitly denied ever receiving the Weills’ permission: “I never got any permission from him. We just used it.”
Rather than put on evidence to rebut Boudreaux’s testimony, Cummings called no witnesses of his own. The only exhibits he entered into evidence were grainy aerial pictures of the tract of land and a Tobin survey of the property from 1985. The sole episode to which Cummings points to support his argument that Boudreaux was permissively using the disputed strip of land is Boudreaux’s agreement in 1969 at the request of Mr. Weill to move the location of the gate, which granted Boudreaux access to the Weills’ property, closer to the Vermillion River. As the majority acknowledges, however, this evidence does not offer any support for Cummings’ argument that Boudreaux’s “possession was begun for |4another” because this episode could just as easily be interpreted as evidence of Boudreaux’s intent to possess as owner.[7]
*567 Given the complete absence of evidence showing Boudreaux’s “possession was begun for another” or with the permission of the Weills, the presumption of ownership must arise in Boudreaux’s favor. Although the presumption alone is enough to shift the burden of proof to Cummings,[8] Boudreaux put on ample evidence in support of the presumption. Numerous witnesses testified that Boudreaux mowed the tract of land and maintained the property. Likewise, witnesses testified the Bou-dreauxs used the passage continuously for various purposes, including hauling farm equipment, making visits to the doctor, going to vote, running errands, etc. Keith Melebeck entered into an agreement in 1999 — an agreement which endured till Cummings locked Boudreaux’s gate in 2012 — to mow the road for Boudreaux in exchange for Boudreaux’s permission to keep mowing equipment on Boudreaux’s property. Melebeck testified that Bou-dreaux told him during this period that the strip has “been a right of way for a hundred years, that they’ve been using [it] since, you know, since their family owned the property.” In 1980, when Boudreaux feared the Weills’ sale of another piece of property might hinder his ability to use the passage adjacent to his own property, Boudreaux appeared at a meeting of the Abbeville Harbor and Terminal District (the 1 ¡¡“Terminal District”) to express his concerns about road construction that might obstruct his access to the passage on the Weills’ property. Jospeh Schex-naider was a registered civil engineer who worked for the Terminal District to whom the Weills sold a piece of property for the construction of the Port of Vermillion. Consistent with Boudreaux’s own testimony, Sehexnaider testified that he was present at this meeting with Boudreaux and that Boudreaux “was concerned whether the roads we were building were going to be public or private, and, in either case, would he still be allowed access to go ahead and go through the [Weills’] property and access his property as he had been doing before we got there.” In response to a question from Cummings’ counsel about whether he ever questioned the Terminal District as to whether or not he had access to the Weills’ property, Sehexnaider responded, “No. He didn’t question us whether he had access or not. He told us that he had access, and he was concerned about being able to reach that access point through the port property.” Indeed, in 1980, soon after the amendment to Louisi *568 ana Civil Code Article 740[9] which would have allowed the Boudreaux’s right of use to begin prescribing, Boudreaux’s interests in using the property were adverse to the Weills’ interests in selling property that would potentially encumber its use. This evidence strongly supports Boudreaux’s position that, regardless of the Weills’ knowledge, Boudreaux was using this property for his own benefit — possessing the right for himself without interruption.
Because Cummings failed to prove that Boudreaux was not entitled to the presumption of ownership, the burden shifted to Cummings to rebut the presumption, which he must do by proof that Bou-dreaux’s possession was precarious. Although Cummings asserts that Boudreaux and the Weills were good neighbors and that Boudreaux and Cummings also were on neighborly terms prior |fito litigation, Cummings put on no evidence whatsoever that Boudreaux’s possession was begun with the permission of the Weills or of Cummings. The majority’s decision to countenance Cummings’ unsupported argument is gravely misguided and severely jeopardizes the law on acquisitive prescription in this state by allowing any property owner to avoid prescription by simply arguing that his opponent’s use of the property was allowed in the spirit of neighborliness. Not only is this contrary to the plain language of article 3437 and its definition of a precarious possessor as one who possesses with “permission,” but its effect would also negate the 1977 revision to article 740, which made discontinuous apparent servitudes susceptible to acquisitive prescription, by making it virtually impossible for a person to be able to prove the elements of acquisitive prescription with respect to such a real right.
At its core, this case concerns a problem of proof. According to the plain language of article 3437, Cummings had to prove that Boudreaux possessed the property between 1978 and 2008 “with the permission” of Cummings and his ancestors in title. Cummings failed to meet his burden. Therefore; Boudreaux should prevail on his action to obtain recognition of his right of passage. Accordingly, I would affirm the judgments of the lower courts.

. Both parties agree that because Bou-dreaux’s alleged possession of the right of passage was without title and without good faith, Boudreaux must prove thirty years of uninterrupted possession in order for him to have obtained the real right by acquisitive prescription. La. Civ.Code art. 742.

. La Civ.Code art. 3437 (emphasis added).

. St. John Baptist Church of Phoenix v. Thomas, 08-0687 (La.App. 4 Cir. 12/3/08), 1 So.3d 618, 623 (quoting Phillips v. Fisher, 93-928 (La.App. 3 Cir. 5/6/94), 634 So.2d 1305, 1307).

. EOG Resources, Inc. v. Hopkins, 48,577 (La.App. 2 Cir. 11/27/13), 131 So.3d 72, 80.

. In Town of Broussard, the Third Circuit was interpreting former La. Civ.Code art. 3488. According to 1982 Revision Comment (a) to La. Civ.Code art. 3427, "This provision reproduces the substance of Article 3488 of the Louisiana Civil Code of 1870. It does not change the law.” Former La. Civ.Code art. 3488 provided: "As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another.”

. Town of Broussard, 357 So.2d at 28.

. Indeed, Boudreaux and Weill’s interaction during this episode is perfectly consistent with what the Code would require if Bou-dreaux actually owned a right of passage *567 across Weill’s property. Under Louisiana Civil Code article 748,
The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate.
Here, according to Boudreaux and to his wife, Weill proposed a location for the gate that was closer to the Vermillion River, Bou-dreaux accepted this proposed location, and Weill paid for some of the expenses of rebuilding the gate. In order for Cummings to prove Boudreaux was not entitled to the presumption of ownership, it would seem logical that he should have to make a showing that Boudreaux's actions were somehow inconsistent with those required of the holder of the right which Boudreaux seeks to acquire.

. See 2 La. Civ. L. Treatise, Property § 320 (4th ed.) ("Article 3427 declares that one is presumed to intend to possess as owner unless he began to possess in the name of and for another. A person who exercises factual authority over property may rely on this presumption and opt not to introduce any evidence as to his intent to possess as owner.’’).

. Because a right of passage is a discontinuous apparent predial servitude, Louisiana law did not provide for prescription of this right until the 1977 revision of Louisiana Civil Code article 740 went into effect on January 1, 1978. Therefore, Boudreaux’s possession of the right of passage could not have begun to become effective until this time.