Judgment rendered August 21, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,784-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LEO CUMPTON AND SARAH B.                Plaintiffs-Appellees
BOLTON

versus

DRAGON ESTATES, LLC                     Defendant-Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 48,461

Honorable John Clay Hamilton, Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, LLP          Counsel for Appellant
By: Robert McCuller Baldwin
    Jason Richard Smith

G. LARRY ARBOUR

COTTON, BOLTON, HOYCHICK,               Counsel for Appellees
& DOUGHTY, LLP
By: John Hoychick, Jr.

* * * * *

Before COX, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Plaintiffs, Leo Cumpton ("Cumpton") and Sarah B. Bolton ("Bolton") (collectively, "Plaintiffs"), filed a boundary dispute action and claim for damages on December 22, 2021, against Defendant, Dragon Estates, LLC ("Defendant" or "Dragon Estates"), alleging 30-year acquisitive prescription, or in the alternative, 10-year acquisitive prescription. Dragon Estates filed a reconventional demand on February 10, 2022, claiming it is entitled to a judgment decreeing it the owner of the subject tract based on just title. After discovery, Plaintiffs filed a motion for partial summary judgment on April 18, 2023. Defendant opposed Plaintiffs' motion and filed its own motion for summary judgment on June 9, 2023. Following a hearing on August 11, 2023, the trial court granted Plaintiff's motion for summary judgment and denied Defendant's motion. Judgment was rendered August 31, 2023, and filed September 1, 2023. Defendant filed a motion for devolutive appeal, which was granted by order dated October 10, 2023.

For the following reasons, we reverse the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

### Dragon Estates Acquisition

Bolton and Dragon Estates are the current owners of adjacent parcels of property in Richland Parish, referred to herein as the "Bolton Tract" and the "Dragon Tract," respectively. Both tracts share a common ancestor in title derived from a 1957 partition deed that created three tracts. Bolton, her brother, Lanny Boies, and her mother, Susie F. Boies, received the first tract, the Bolton Tract. R.C. Boies received the second tract. Dragon Estates later

purchased approximately 21.36 acres of the second tract, the Dragon Tract, from the Boies family in December 2020. The remainder of the second tract is owned by a third party not involved in the property dispute.

Bill Holdman ("Holdman") agreed to buy the Dragon Tract from certain members of the Boies family, Glen Boies and Rachel Gandy, who had requested that he purchase the family property since the other joint owners no longer wanted to live in the area. Holdman formed Dragon Estates for the purpose of purchasing the property. Before purchasing, Holdman commissioned a professional land surveyor, Tommy Semmes, Jr., to survey the boundaries of the property, which was completed in April 2020 ("Semmes Survey"). Dragon Estates then purchased the property by deed recorded December 30, 2020. In February 2021, Holdman had a barbed wire fence built on the northern boundary of the Dragon Tract per the Semmes Survey. At some point during either the surveying process or building the fence, Holdman discovered that a portion of land just south of the Dragon Tract's surveyed boundary line was being farmed by Cumpton pursuant to a lease with Bolton, and there was an irrigation well south of the boundary. Plaintiffs allege that the fence Holdman constructed was in a field being actively cultivated by Cumpton and he was denied access to the irrigation pump, which ultimately resulted in the Plaintiffs filing suit regarding the boundary dispute.

Dragon Estates purchased the property to develop a residential subdivision, the location being ideal because Boies Road (a public road) runs through the northern part of the Dragon Tract. Dragon Estates claims that it is critical to the development for the Dragon Tract to include an area

2

up to 45 feet north of the center line of Boies Road for a utility right-of-way. According to the Semmes survey, the northern boundary line of the Dragon Tract was the necessary distance from Boies Road to include the requisite space for the right-of-way. Dragon Estates also claims the encroaching irrigation well would have to be moved because it is obstructing the required right-of-way.

### *Bolton Ownership and Possession*

Bolton acquired the Bolton Tract by way of the 1957 partition deed, and it was owned by her family even prior to that time. Bolton testified that she had continuously possessed the property up to Boies Road because she believed she owned that portion of the property as part of the Bolton Tract. She alleges that the property that is the subject of the dispute has been in cultivation since the 1970s, and in pasture before then. Billy Boies maintained the Bolton Tract in pasture until he farmed it from about 1979 to 1987. His son, Glen Boies, farmed the property from 1987 to 1999. When Glen Boies stopped farming, Eric Rushing leased the land for farming from 1999 to 2019. The property was not cultivated for approximately one year, 1999 to 2000, but it was subject to Eric Rushing's farm lease. Cumpton began leasing the property in 2019.

At some point in or before 1966, a fence was constructed which separated the two tracts. The boundary fence existed for more than 30 years until it was removed. An aerial photograph of the property from 1989 showed the fence still in place. Glen Boies testified that he farmed the property up to the fence until 1999, and Eric Rushing testified that no fence was in place when he leased the property in 1999. Therefore, according to

3

this timeframe, the fence was likely removed in 1999. There are some fence remnants on the east and west ends of the property near the boundary area, but the parties dispute the location of the remnants in relation to the boundary line and whether the remaining fence parts can sufficiently indicate whether it was actually part of the previous boundary fence.

At some point, a structure used as the residence of Glen Boies' uncle was built on the east end of the current Dragon Tract; and Boies Road, formerly Parish Road 4432, was constructed leading from the public highway, then LA Highway 137, currently US Highway 425, to the structure. The road ran south of and alongside the fence line separating the Bolton tract from the current Dragon tract, though it supposedly curved south at one time due to the location of a cattle catch-pen on the current Dragon Tract. However, the parties dispute the exact location of this particular curve in the road and its distance to the fence. Boies Road became a public road sometime prior to 1984, and electrical services were established January 21, 1982, that ran to the structure on the Dragon Tract. Electric power poles were placed alongside the boundary fence and the north edge of Boies Road, but the parties do not agree as to the exact proximity of the poles to the fence.

In 1985, the State Department of Transportation ("DOTD") began constructing a four-lane highway utilizing a portion of railroad property between the public highway and the western sides of the subject properties. Plats were drawn showing the extent of ownership, and the Boies and Bolton families executed deeds to sell portions of their land to the State for purposes of constructing the new roadway.

4

Plaintiffs introduced into evidence historical aerial photographs of the two tracts from 1969, 1983, 1985, and 2007, to identify the location of the roadways, structures, and boundary fence. They claim that the photographs also show the curve in Boies Road due to the catch-pen location, explaining that the boundary fence was attached to the northeast corner of the catch-pen, and that Boies Road was straightened and moved closer to the boundary fence after the DOTD constructed the roadway and its exit/entrance went through what was once the catch-pen. Dragon Estates argues that the photographs do not sufficiently establish the location of the fence.

### Anderson Testimony

Bradford Anderson ("Anderson") is a licensed surveyor who was retained as the Plaintiffs' expert witness to create an aerial depiction of the boundary line between the two tracts as established by the historical photographs of the fence and surrounding land, markers and monuments located on the properties, the fence remnants, the electrical poles, the DOTD surveys and plats, the Semmes Survey, and Boies Rd. He projected the fence location based on the remnants, and found it to be consistent with the DOTD survey boundary line and other supporting information. Anderson did not conduct a perimeter survey of the tracts.

Anderson testified that there was a discrepancy between the DOTD surveys and the Semmes Survey, opining that the DOTD survey was more accurate. He stated that he believed the Semmes Survey used an incorrect southern boundary line of the Dragon Tract, which would have resulted in an incorrect northern boundary line and the alleged encroachment. Anderson also prepared a plat and legal description of the boundary line at the request

5

of the trial court judge at the conclusion of the motion for summary judgment hearing based on Anderson's depiction and the trial court's determination.

## DISCUSSION

*Acquisitive Prescription*

Plaintiffs argue that Bolton established ownership of the disputed tract by way of both 10-year and 30-year acquisitive prescription. To acquire property through acquisitive prescription, one must take corporeal possession of the thing and must intend to possess as owner. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3424; La. C.C. art. 3425; *Livingston v. Unopened Succession of Dixon*, 589 So. 2d 598 (La. App. 2 Cir. 1991). In the absence of title, one has possession only of the area he actually possesses. La. C.C. art. 3426. Possession must be continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476; *Bennett v. Louisiana Pacific Corp.*, 29,598 (La. App. 2 Cir. 5/9/97), 693 So. 2d 1319, *writ denied*, 97,1552 (La. 10/3/97), 701 So. 2d 199.

To be entitled to property by 10-year acquisitive prescription, one must have possessed the property for 10 years in good faith and with just title. La. C.C. art. 3475. A title is just when the deed is written, in valid form, and sufficient to transfer ownership on its face. The 1957 partition deed effectively operated to transfer ownership of the Bolton Tract. No survey was done of the entire tract other than when the DOTD survey referred to the western and southern portions of the tract; however, the deed nonetheless was translative of title *on its face* such that Bolton had a good

6

faith belief that she owned the disputed portion. Bolton had just title to support the Plaintiffs' claim for 10-year acquisitive prescription.

In any event, there appears to be no dispute that Bolton possessed property up to the previous fence for 30-year acquisitive prescription. However, Dragon Estates claims that there is no way to establish the boundary line to which Bolton maintained possession since the fence no longer exists and its location cannot be identified.

Possession, for purposes of acquisitive prescription without title, extends only to that which has actually been possessed. La. C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. *Franks Inv. Co., L.L.C. v. Shaw*, 52,636 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1210, *writ denied*, 19-00737 (La. 9/6/19), 278 So. 3d 370; *EOG Res., Inc. v. Hopkins*, 48,577 (La. App. 2 Cir. 11/27/13), 131 So. 3d 72, *writ denied*, 13-2861 (La. 3/14/14), 134 So. 3d 1196; *Brunson v. Hemler,* 43,347 (La. App. 2 Cir. 8/13/08), 989 So. 2d 246, *writ denied*, 08-2297 (La. 12/12/08), 996 So. 2d 1119. The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. *Luffey Timber Co., LLC v. Florence*, 47,482 (La. App. 2 Cir. 9/26/12), 106 So. 3d 596; *Conway v. Crowell Land & Mineral Corp.*, 93-1158 (La. App. 3 Cir. 4/6/94), 635 So. 2d 544, *writ denied*, 94-1198 (La. 7/1/94), 639 So. 2d 1166; *Hill v. Richey*, 221 La. 402, 59 So. 2d 434 (1952); *Brunson*, *supra*.

The intent to possess as owner has to do with the subjective intent of one who professes to possess and does not mean that the possessor must pretend to have valid title rights. *Franks, supra.* If a party or ancestors in title can prove possession of 30 years without interruption within visible bounds of more land than the title called for, the boundary shall be fixed along those bounds. La. C.C. art. 794; *Loutre Land & Timber Co. v. Roberts*, 10-2327 (La. 5/10/10), 63 So. 3d 120; *EOG Res., supra.* It is not necessary for a person who takes possession of a tract of land to build a fence around it in order to fix the boundaries of what he intends to possess if the limits of his possession are marked by natural boundaries and if he actually possesses or uses all of the land within the boundaries. Fences are not the only visible boundaries sufficient to support acquisitive prescription. *Coleman v. Henderson*, 353 So. 2d 1091 (La. App. 2 Cir. 1977). A ditch, a hedge, a road, a turnrow, or the like, may be sufficient. *Id.* Mowing grass has been sufficient to prove acquisitive prescription. *Alston v. Moore*, 55,296 (La. App 2 Cir. 11/15/23), 374 So. 3d 277.

***Surveyor Credibility***

Plaintiffs refer to Anderson's testimony that he believed the DOTD survey that includes the boundary line between the two tracts is more accurate than the Semmes Survey. Anderson testified that the Semmes Survey may have used an incorrect southern boundary of the Dragon Tract, a fence line rather than the correct boundary, which resulted in the northern boundary being too far north. Plaintiffs also noted that the Semmes Survey was prepared by Tommy Semmes, Jr., but that it was actually conducted by Tommy Semmes, III, who works for his father, but is not a licensed

8

surveyor. They claim that the Semmes Survey actually shows the fence remnants and essentially projects the previous fence.

Dragon Estates argues at length that Anderson's testimony and exhibits are not credible or reliable. It points out that Anderson did not conduct an actual survey, pointing out the multiple statements in his materials that his depictions were to be used for reference and convenience only. It also emphasizes that the fence remnants should not have been used in Anderson's depictions since there is no way to tell whether the remnants were part of the fence that was removed 25 years ago. It also notes the uncertainty of the aerial photographs, particularly as to scale and the ability to obtain accurate measurements therefrom.

Plaintiffs address Dragon Estates' criticism of Anderson's exhibits and the lack of survey, noting that he did use the DOTD survey when creating his depictions of the boundary line. They claim that there was no reason for an additional survey to show adverse possession, since Bolton was claiming adverse possession of the property for over 30 years. Anderson's exhibits and testimony were to accurately depict the boundary line established by way of Bolton's possession by farming up to the fence, then the power poles and/or roadway.

### Summary Judgment; Standard of Review

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Hester v. Walker*, 20-01278 (La. 5/13/21), 320 So. 3d 362; *Roach v. Moffatt*, 55,415 (La. App. 2 Cir. 1/10/24), 379 So. 3d 268; *Rodessa Oil & Land Co. v. Perkins*, 47-378 (La. App. 2 Cir. 8/8/12), 104 So. 3d 52;

9

*In re Clement*, 45,454 (La. App. 2 Cir. 8/11/10), 46 So. 3d 804. The motion for summary judgment shall be granted if the motions, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Minifield v. Gardner*, 54,686 (La. App. 2 Cir. 8/10/22), 345 So. 3d 495. Further, despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. *Rodessa*, *supra*; *Shelter Ins. Co. v. Broan-Nutone, LLC*, 39,625 (La. App. 2 Cir. 5/11/05), 902 So. 2d 1146, *writ denied*, 05-1483 (La. 12/16/05), 917 So. 2d 1112.

A material fact is one that potentially insures or precludes recovery, affects a party's ultimate success, or determines the outcome of the dispute. *Rodessa*, *supra*. A genuine issue is one about which reasonable persons could disagree. *Id*. If only one conclusion could be reached by reasonable persons, then there is no triable issue and summary judgment is proper. *Id.*; *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

In determining whether a factual issue is genuine for purposes of summary judgment, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Crescent City Property Redevelopment Assoc., LLC v. Muniz*, 21-00371 (La. 6/1/21), 347 So. 3d 682; *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37. Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. *FMC Enters., L.L.C. v. Prytania-St. Mary*

10

*Condominiums Assoc., Inc.*, 12-1634 (La. App. 4 Cir. 5/15/13), 117 So. 3d 217. One reason summary judgment is seldom used for the determination of subjective facts is because it calls for credibility evaluations and the weighing of testimony. *Id.* Additionally, the circumstantial evidence usually necessary for proof of motive or intent requires the trier-of-fact to choose from competing inferences, a task not appropriate for a summary judgment ruling. *Id.*

Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Rodessa*, *supra*; *Palmer v. Martinez*, 45,318 (La. App. 2d Cir. 7/21/10), 42 So. 3d 1147, *writ denied*, 10-1952 (La. 11/5/10), 50 So. 3d 804; *Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So. 2d 839; *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So. 2d 634.

The burden of proof is on the mover, unless that party would not bear the burden of proof at trial. La. C.C.P. art. 966(D)(1); *Perkins v. Fowler*, 17-392 (La. App. 3 Cir. 11/22/17), 234 So. 3d 96. The mover need only show an absence of factual support for one or more elements essential to the adverse party's claim. *Id.* The burden then shifts to the adverse party who must demonstrate that he will in fact meet his evidentiary burden at trial. *Id.* The party seeking title to a tract of land through acquisitive prescription bears the burden of proof. *Fallin v. Pesnell*, 27,814 (La. App. 2 Cir. 1/24/96), 667 So. 2d 581; *Livingston*, *supra*. That party must prove actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world

11

of the extent of possession exercised. *Pinola Preserve, L.L.C. v. Star B Ranch, L.L.C.*, 53,823 (La. App. 2 Cir. 4/14/21), 361 So. 3d 991, *writ denied*, 21-00861 (La. 10/12/21), 325 So. 3d 1069; *Alston*, *supra*; *supra*; *Luffey Timber*, *supra*; *Conway*, *supra*; *Hill*, *supra*; *Brunson*, *supra*.

### *Reasoning*

The heart of this case is whether there is a genuine issue of material fact as to whether there has been possession within visible bounds, i.e., determining the location of the previous fence as the boundary line of possession. In a boundary action or claim for acquisitive prescription, the boundary's location is a question of fact to be determined by the trier of fact, and such determination should not be reversed on appeal in absence of manifest error. *Horaist v. Pratt*, 21-00166 (La. 3/23/21), 312 So. 3d 1093; *Franks*, *supra*. In the context of summary judgment, the boundary's location is a question of material fact since the inability to prove possession within certain visible bounds would preclude recovery. If reasonable persons can disagree as to the boundary's location, that material issue of fact is genuine and would render summary judgment improper.

Plaintiffs claim that although the fence was removed, Bolton continued to possess the property adversely inch by inch to the point where the fence had been, even beyond, by farming the land and drilling/using the irrigation well, and it was not interrupted until Dragon Estates erected its barbed wire fence. They refer to the testimony from Glen Boies, Eric Rushing, and Cumpton, all indicating the boundary up to which the land was cultivated while there was no fence. Bolton asserts the fence had been attached to the northeast corner of a catch-pen located north of the road,

12

resulting in a further distance between the fence and the road in that particular section, but that the fence was much closer to Boies Road once the catch-pen was removed and the road was straightened. Plaintiffs claim that testimony and evidence indicate that the electrical poles were placed alongside the fence, so that when the fence was removed, the location of the poles essentially maintained the boundary line such that cultivation to the poles is sufficient to prove possession to the previous fence. Plaintiffs presented a depiction created by Anderson that recreated the fence line from the remnants, coupled with his testimony that the proposed boundary line was consistent with the DOTD surveys, as well as a statement that he believed the Semmes Survey to be inaccurate.

Dragon Estates refers to testimony that the previous fence was "close" to its recent fence placed along the boundary per the Semmes Survey, as well as other evidence regarding the inability to accurately pinpoint the former fence location. It describes the fence remnants, noting testimony that they were difficult to find and claiming that there is no way to confirm that they were part of the fence that had been removed 25 years ago. It claims that there is evidence that the fence was actually located 40 to 50 feet north of Boies Road, such as where the previous catch-pen was located in relation to the road prior to being paved, supporting that the fence was not alongside the road as the Plaintiffs claim. Dragon Estates argues that there is no evidence to determine the location of the missing fence with the certainty that is required by law to establish a boundary necessary for an acquisitive prescription action. It further notes that Anderson's depiction was merely a

recreation of a boundary that did not exist and wasn't supported by evidence, especially since he did not conduct a survey.

When discussing its ruling at the summary judgment hearing, the trial court made the following statements:

> I feel fairly confident that the fence based on the photographs and based on most of the testimony that the only fence that was there was in fact on the edge of the right of way of Boies Road, 4423 and not forty to fifty feet out into the field, except with respect to the location of the catch pen which … that's where the forty and fifty feet area came from. …

> It appeared clear that the line, fence or no fence, ran in conformity with the location of the electric power poles based on the photographs that I saw or the documents so I don't have an answer for you in terms of a legal description in footage but it may be the most logical thing to have the legal description amended so that the southern line of the Bolton tract matches up with the right of way boundary of the road. …

> My ruling is that the possession line for the acquisitive prescription is going to go up to at least where the telephone poles are, where I believe the old fence existed.

After further discussion on whether the boundary would be to the right-of-way or to the poles, the court stated that:

> Because I feel like the possession line of acquisitive prescription went up to the power poles I don't feel comfortable extending it any further toward Boies Road than that. …

> I see through the years that the line was consistent in line with where the poles were eventually placed in '81.

The court ultimately agreed to draw a line "that would basically just be three or four inches north of the electric poles" and for Anderson to create a legal description for that location.

In this case, there are conflicting surveys with different boundary lines – the boundary as shown in the DOTD survey when the western portions of the two tracts were acquired, and the Semmes Survey. Plaintiffs' expert,

14

Anderson, did not conduct an independent survey, but relied on the DOTD survey in creating an aerial depiction of his proposed boundary line. Both parties question the accuracy, i.e., credibility, of the other's survey/depiction. Although a survey is not necessary to determine possession, it does support where the previous fence may have been placed pursuant to the 1957 partition deed and the resulting possession up to that boundary.

The evidence provided to establish the fence's location included testimony from multiple witnesses regarding possession up to the fence, aerial photographs of the tracts, and pictures of the fence remnants along with testimony of their identification. The aerial photographs in the record seem to show a fence line, but they lack the clarity required to determine the fence's exact location from the photograph alone, and it is uncertain how accurately the scale of the photographs aligned with the existing surveys. There are current pictures of the utility poles, but there is little, if any, evidence to show the proximity of the poles to the previous fence other than the remnants. Further, the evidence shows that the poles were installed when the fence was already in place, such that there would have been a certain amount of distance between the two in order to accommodate installation. It is presumed that electricity would have run commensurate with the roadway, not necessarily the fence. The remnants appear to be in the vicinity of where the fence would have been, but we do not find compelling evidence that they are from the fence removed 25 years ago or that it is possible that they can be used to accurately recreate a fence line.

There is testimony in the record that the purpose of the fence was a cattle enclosure, not necessarily where the parties intended the boundary to be; therefore, it is a reasonable assumption that the fence was a certain distance south of the boundary line, even at the northern part of the former catch-pen. Testimony further indicates that Boies Road originated as merely a pathway through the pasture, which later served as access to a structure, and even later straightened and paved. The power poles were installed on the current Dragon Tract prior to Boies Road becoming a public road. It is known that the poles were located north of the road, and the fence was north of the poles, but the record is unclear as to how the poles aligned with the road and fence at the time they were installed.

Due to the amount of conflicting evidence and credibility issues regarding the surveyed boundary lines, the lack of evidence to determine whether the fence remnants were that of the previous fence, the uncertainty as to how the poles were installed and aligned in relation to the fence and/or road, we do not find that the Plaintiffs met their burden of proof on their motion for summary judgment to show that no genuine issue of material fact existed as to the boundary line. As evident in its ruling, the trial court considered the merits, made credibility determinations, evaluated testimony, and weighed evidence. Such considerations were not proper in determining whether the factual issue of the boundary determination was genuine for purposes of summary judgment. More than one conclusion as to determination of the boundary line could be reached by reasonable persons; therefore, the issue is triable and summary judgment is improper.

**CONCLUSION**

For the foregoing reasons, this Court REVERSES the trial court's judgment and REMANDS for further proceedings. Court costs related to appeal are to be taxed to the Plaintiffs.

**REVERSED AND REMANDED.**